IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| ANTHONY MINGUEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>LT JOSEPH C. RACITE, *et al.*,<br><br>    Defendants. | Civil Action No. 25-01395<br>(RMB/EAP)<br><br><br>OPINION |

**APPEARANCES:**

Richard F. Klineburger, III, Esq.
Klineburger Law
38 North Haddon Avenue
Haddonfield, New Jersey 08033

   *Attorney for Plaintiff Anthony Minguez*

Marvin L. Freeman, Esq.
Deputy Attorney General
R.J. Hughes Justice Complex
25 Market Street – P.O. Box 112
Trenton, New Jersey 08625-0112

   *Attorney for Defendant Salem County Prosecutor's Office*

**RENÉE MARIE BUMB, Chief United States District Judge:**

   This matter comes before the Court upon the Motion to Dismiss filed by Defendant, Salem County Prosecutor's Office ("SCPO" or "Defendant"), seeking dismissal of all Counts against the SCPO. [Docket No. 39.] Plaintiff opposed the

Motion. [Docket No. 44.] Defendant replied. [Docket No. 53.] For the reasons set forth herein, Defendant's Motion to Dismiss will be GRANTED.

## I. FACTUAL BACKGROUND[1]

As alleged in the Complaint, on February 12, 2023, Plaintiff was babysitting his girlfriend's two-year-old son, "J.R." at Plaintiff's residence in Carney's Point, New Jersey. Compl. ¶¶ 14–15 [Docket No. 1.] While Plaintiff was holding J.R. in an effort to calm him during a tantrum, J.R. suddenly threw himself backward, causing his head to strike Plaintiff's tiled floor. [*Id.* ¶¶ 18–23.] Soon after, J.R. began to show signs of a seizure. [*Id.* ¶ 26.] Plaintiff, a Penns Grove Police Officer, called 911 and administered CPR. [*Id.* ¶ 27.] J.R. was subsequently transported to DuPont Children's Hospital in Christiana, Delaware, where he was diagnosed with a concussion and a minor brain bleed. [*Id.* ¶¶ 30, 33, 35.]

The next day, J.R.'s mother notified Plaintiff that police and child services had arrived at the hospital, and Plaintiff was now under criminal investigation. [*Id.* ¶ 39.] One of the officers on the case was Lieutenant Joseph C. Racite ("Racite"), with whom Plaintiff shared a negative history. [*Id.* ¶¶ 40–41.] Specifically, Plaintiff had previously assisted his friend, Steve Labb ("Labb"), in reporting to the SCPO an assault and the lack of assistance Labb received by Carney's Point Police and Racite. [*Id.* ¶¶ 42–51.] An unnamed officer advised Plaintiff that Racite and Police Chief Dale VanNamee

---

[1] The Court draws all factual background from the Complaint, the exhibits referenced therein, and publicly available materials. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). At this stage, the Court accepts all well-pled factual allegations as true and views them in the light most favorable to Plaintiffs. *See Evancho v. Fisher*, 423 F.3d 347, 350–51 (3d Cir. 2005).

("VanNamee") spread a rumor that Plaintiff conspired to destroy video footage of that assault. [*Id.* ¶¶ 52–53.] Plaintiff notified his superior and the SCPO about the rumor. [*Id.* ¶¶ 54–55.] Additionally, Plaintiff had past run-ins with Racite and VanNamee involving Plaintiff's brother who battled opioid addiction. [*Id.* ¶¶ 55–57.] Plaintiff heard rumors that Racite and VanNamee advised against Plaintiff's hiring as a police officer and advised other officers not to be associated with Plaintiff. [*Id.* ¶ 58.]

On February 23, 2023, Plaintiff received a call from his Lieutenant, Robert Frett, notifying him he was being charged with child abuse, aggravated assault, and endangering the welfare of a child. [*Id.* ¶ 64.] Plaintiff turned himself into Carney's Point Police Station, where upon entering, Racite told Plaintiff "We are here today basically because my character was called into question." [*Id.* ¶¶ 64–65.] Plaintiff was subsequently informed that on the day he turned himself in, VanNamee was jovial and repeatedly stated "I finally got Minguez' ass!" [*Id.* ¶ 67.]

Plaintiff was placed on suspended administrative leave from his position as a Penns Grove Police Officer and hired legal counsel to fight the charges. [*Id.* ¶ 68.] Plaintiff's counsel repeatedly contacted the SCPO seeking investigative reports, other relevant information, and an opportunity to meet with prosecutors. [*Id.* ¶¶ 69–71, 74.] On August 10, 2023, Plaintiff's counsel notified the SCPO that Defendant Racite was looking for a reason to malign Plaintiff. [*Id.* ¶ 72.] Plaintiff's counsel provided the SCPO with its correspondence from the New Jersey Division of Child Protection and

Permanency which deemed the allegations against Plaintiff as "Not Established." [*Id.* ¶ 73.]

On December 6, 2023, Plaintiff's matter was presented to the Salem County Grand Jury. [*Id.* ¶¶ 75–76.] The Grand Jury returned an Indictment against Plaintiff. [*Id.* ¶ 77.] On December 13, 2023, Plaintiff's counsel filed a Notice of Motion to Dismiss the Indictment. [*Id.* ¶ 78.] On February 16, 2024, the Honorable Linda Lawhun dismissed all charges against Plaintiff. [*Id.* ¶ 79.]

The SCPO subsequently brought an Internal Affairs action against Plaintiff whereby he was charged with fifteen (15) alleged violations of the SCPO Standard Operating Procedures. [*Id.* ¶ 80.] On April 17, 2024, every charge was deemed NOT SUSTAINED; UNFOUNDED; and EXONERATED. [*Id.* ¶ 80.] These charges, along with the criminal charges, retraining, and a psychological examination, resulted in Plaintiff's reinstatement as a Penns Grove Police Officer being delayed for eighteen (18) months, during which time he suffered a loss of income. [*Id.* ¶¶ 81–83.]

## II. PROCEDURAL HISTORY

Plaintiff filed this Complaint on February 21, 2025. [Docket No. 1.] The Complaint alleges Fourth Amendment violations by Defendant Racite of false detention, false arrest, false imprisonment, and malicious prosecution under 42 U.S.C. § 1983 (Count I) and malicious prosecution (Count II). Plaintiff alleges claims against Defendant Carney's Point Police Department and Carney's Point Township for failure to train, supervise and discipline (Count III). Plaintiff alleges claims against Defendant

4

VanNamee for failure to train, supervise and discipline Defendant Racite (Count IV). Plaintiff alleges claims against the SCPO for violations of the Fourth Amendment for false detention, false arrest, false imprisonment and malicious prosecution under 42 U.S.C. § 1983 (Count V) and malicious and retaliatory prosecution (Count VI). Finally, Plaintiff asserts claims for failure to train, supervise and discipline Defendants John and Jane Doe, against Salem County and the SCPO, under 42 U.S.C. § 1983 and Monell (Count VII).

On June 26, 2025, the SCPO filed a Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6), arguing that the SCPO is entitled to Eleventh Amendment Sovereign Immunity for all federal and state law claims, and as an arm of the State, the SCPO is not a "person" subject to suit under § 1983 or the New Jersey Civil Rights Act ("NJCRA"). [Docket No. 39-2 at 1.] On August 4, 2025, Plaintiff filed an Opposition, arguing that absolute prosecutorial immunity does not apply to non-judicial functions, Plaintiff's First Amendment retaliation claim is plausible, Plaintiff sufficiently states Monell claims against SCPO, Defendant's Motion is premature, and discovery is necessary. [Docket No. 44-4 at 3–7.] On September 2, 2025, the SCPO filed a Reply. [Docket No. 53.]

### III. LEGAL STANDARD

#### A. <u>Lack of Subject Matter Jurisdiction 12(b)(1)</u>

"A district court entertaining a Rule 12(b)(1) motion to dismiss ... must first ascertain whether it 'presents a 'facial' attack or a 'factual' attack on the claim at issue,

because that distinction determines how the pleading must be reviewed.'" *Long v. Se. Pennsylvania Transportation Auth.*, 903 F.3d 312, 320 (3d Cir. 2018) (quoting *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012); *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). When there is a facial attack on a claim, a district court "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *In re Schering Plough*, 678 F.3d at 243 (quoting *Gould Elec. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). On the other hand, if the defendant contests the truth of the jurisdictional allegations, there is a factual attack, and the district court must hold a plenary trial to resolve any material factual disputes. *Long*, 903 F.3d at 320 (citing *Constitution Party of Pa.*, 757 F.3d at 357); *Schuchardt v. President of the U.S.*, 839 F.3d 336, 343 (3d Cir. 2016). Defendant presents a facial challenge to jurisdiction.

B. **Failure to State a Claim 12(b)(6)**

When considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). It is well-settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

6

> "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (alteration in original) (citations omitted) (first citing *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); then citing *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994); and then citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).
>
> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (citations omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 675, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). A court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 563 n.8, 127 S.Ct. 1955 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)); *see also Iqbal*, 556 U.S. at 684, 129 S.Ct. 1937 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' ...."); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("*Iqbal* ... provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly*."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Malleus*, 641 F.3d at 563 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).

## IV.  DISCUSSION

### A. <u>Lack of Subject Matter Jurisdiction</u>

Absent waiver, "[t]he [Eleventh] Amendment has been interpreted to protect an unconsenting state from 'suit in federal court by its own citizens as well as those of another state.'" *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 (3d Cir. 1996) (quoting *Pennhurst State School v. Halderman*, 465 U.S. 89, 100 (1984)) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)). "A suit [against a state agency] may be barred by the [E]leventh [A]mendment even though a state is not named a party to the action, as long as the state is the real party in interest." *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989). In New Jersey, county prosecutor's offices "are considered state agencies for § 1983 purposes when fulfilling their law enforcement

8

and investigative—as opposed to administrative—roles." *McKinney v. Prosecutor Cty. Prosecutor's Off.*, 612 F. App'x 62, 65 (3d Cir. 2015) (citing *Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 855 (3d Cir. 2014)). County prosecutors act as arms of the state when they engage in classic law enforcement and investigative activities and are thus entitled to Eleventh Amendment immunity unless they waive it. *Beightler v. Office of Essex County Prosecutor*, 342 F. App'x 829, 832–33 (3d Cir. 2009); *Hyatt v. Cty. of Passaic*, 340 F. App'x 833, 837 (3d Cir. 2009) ("under New Jersey law, the [Passaic County Prosecutor's Office] 'remains at all times subject to the supervision and supersession power of the Attorney General' when performing its prosecutorial function and is not autonomous from the State[,]" and is thus entitled to Eleventh Amendment immunity) (quoting *Wright v. State*, 778 A.2d 422, 462 (N.J. 2001)).

Here, it is clear based upon the pleadings that Plaintiff's claims against the SCPO are based on Plaintiff's criminal prosecution and related internal investigation. There is no other plausible reading of Plaintiff's claims. Accordingly, the Defendant is entitled to Eleventh Amendment immunity, and the constitutional claims against it must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

### B. Failure to State a Claim

Defendant is also correct, in the alternative, that the SCPO is not a "person" amenable to suit under § 1983 or the NJCRA.

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255–56 (3d Cir. 1994).

Claims under § 1983 may only be brought against "persons" or municipalities. *See e.g.*, *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). A county prosecutor's office is a state agency for § 1983 purposes, and is not a person amenable to suit under § 1983. *Mikhaeil v. Santos*, 646 F. App'x 158, 161 (3d Cir. 2016) (citing *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 854–55 (3d Cir. 2014) (holding that New Jersey county prosecutors' offices are considered state agencies for § 1983 purposes when fulfilling their law enforcement and investigative—as opposed to administrative—roles)).

Count VII of Plaintiff's Complaint asserts claims for a violation of § 1983 against the SCPO for a "policy and practice failing to discipline, train, and supervise or sanction" officers "with respect to their constitutional, statutory, and departmental

limitations of their authority to prosecution of citizens." Compl. ¶¶ 130–34. To maintain a claim brought pursuant to 42 U.S.C. § 1983 against a municipality based on the acts of its individual employees, a plaintiff must show that his constitutional injury was the result of the implementation of a municipal policy or practice. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Hill v. Borough of Kutztown,* 455 F.3d 225, 245 (3d Cir. 2006). Official policy or practice is implemented by an individual's conduct when the individual acted according to a formal policy, when he or she is a policymaker, or when such conduct is ratified by a policymaker after it occurred. *Hill,* 455 F.3d at 245. However, where there is no underlying constitutional violation there can be no Monell claim. *See Kiriakidis v. Borough of Vintondale,* No. 14–2934, 2015 U.S.App. LEXIS 5940, at *10 (3d Cir.2015) ("Because we conclude that there was no constitutional violation, Appellants cannot sustain a claim against the Borough of Vintondale under Monell"); *Strunk v. Chester Cnty.,* No. 13–824, 2015 U.S. Dist. LEXIS 24523, *13–14 (E.D.Pa.2015) (dismissing plaintiffs' Monell claims against a municipality where there was no constitutional violation).

For the reasons already set forth above, there are no claims remaining in this matter against the SCPO that are based on a constitutional violation. Therefore, Plaintiff's Monell claim must be dismissed. *Id.*

## V. CONCLUSION

For the reasons expressed above, the Court grants Defendant's Motion to Dismiss. An appropriate Order follows.

<u>**s/Renée Marie Bumb**</u>
RENÉE MARIE BUMB
Chief United States District Judge

DATED: <u>January 28, 2026</u>